DOZIER, *Administrator, Appellant,* v. MATSON *et al.*

Fraudulent Conveyance: ORAL GIFT OF LAND: POSSESSION: VALUABLE IMPROVEMENTS. Where a father, in solvent circumstances, made an oral gift of land to his son, who entered into possession thereof and made valuable and lasting improvements on it, the latter stands before a court of equity in the attitude of a purchaser, and may compel a conveyance, and has a good title as against the creditors of the father.

*Appeal from St. Louis City Circuit Court.*—HONS. SHEPARD BARCLAY and AMOS M. THAYER, Judges.

AFFIRMED.

*George A. Castleman, Theodoric F. McDearmon* and *Henry D. Laughlin* for appellant.

(1) The obligation of the bond of A. S. Matson, principal, and Dozier and Fulkerson, securities, constituted a debt from and after the execution of the bond, and plaintiff, whose intestate discharged the same, can enforce the same remedies, in virtue thereof, as the ward could. Note to *Sexton v. Wheaton,* 1 American Leading Cases [5 Ed.] p. 45, Hare and Wallace's notes. (2) The voluntary conveyance to Richard C. Matson, dated March 20, 1877, being executed and delivered after the insolvency of the grantor, is fraudulent and

void as against the plaintiff, whose intestate was a prior
creditor. *Gamble v. Johnson*, 9 Mo. 605; *Woodson v.
Poole*, 19 Mo. 344; *Potter v. McDonald*, 31 Mo. 73; *Patten v. Casey*, 57 Mo. 119; *Payne v. Stanton*, 59 Mo. 159;
*Mittelberg v. Harrison*, 11 Mo. App. 136. (3) The
alleged letter from A. S. Matson to his son, Richard C.
Matson, of alleged date of December 21, 1871, and the
subsequent possession of the land covered by the voluntary deed of March 20, 1877, created, as against a prior
creditor of the donor, no equity in favor of the donee.
*Rucker v. Abell*, 8 B. Monroe, 566; *Goldsby v. Johnson*,
82 Mo. 602; Bump on Fraud. Con. [3 Ed.] 38, 39, 40.
As the case is not between parties and privies, the rule
laid down in *Sutton v. Hayden*, 62 Mo. 101, and prior
cases, cannot, in any way, affect the question at bar.
(4) If said letter could be held as tantamount to a
deed, the position taken by the judges of the circuit
court, still the failure to record or impart other notice of
it until 1877, six years after its alleged date, the grantor
in the meantime enjoying the credit secured and maintained by the reputed ownership, is, of itself, sufficient
to vitiate the voluntary conveyance as against creditors
not subsequent to such record or other established
notice thereof. *Walsh v. Chambers*, 13 Mo. App. 309;
*Goldsby v. Johnson*, 82 Mo. 602. (5) If said deed,
dated March 20, 1877, had borne the date of the alleged
letter, December 21, 1871, or even the date of deed to
William H. Matson, December 31, 1869, still, being voluntary, it would be void as against plaintiff, whose intestate was a creditor prior to all of said dates. *Payne
v. Stanton*, 59 Mo. 159; *Boyle v. Boyle*, 6 Mo. App. 594;
*Whitter v. Saunders*, 1 Matthews (75 Va.) 568; *Hanson
v. Buckner's Ex'r*, 4 Dana, 252; *Cosby v. Ross' Adm'r*,
3 J. J. Marshall, 290; *Spirett v. Willows*, 3 D. J. & S.
203; *Kidney v. Coussmaker*, 12 Ves. 155.

No brief for respondents.

SHERWOOD, J.—The plaintiff seeks, by this proceeding in equity, to set aside as fraudulent, as against his creditors, a deed executed March 20, 1877, by Abraham S. Matson to his son, Richard S. Matson, the defendant. In 1868 the father moved to St. Louis. In 1869, after moving to that city, the father bought a piece of land for his only other son and child, W. H. Matson, and then so divided the home farm as to give each of his sons a portion of the homestead. Each son was placed in possession of the portion awarded him, and each of them have paid taxes and made valuable improvements on the share then assigned him ; but a deed was only made at that time to W. H. Matson, though one was virtually promised the younger son, who was not of age at the time, the father saying, in the presence of his sons, to the surveyor who ran the division line between their respective farms : "I want to give them this farm; I want you to divide it between them." The reason given by the father at the time for not making a deed to his younger son, also, was that of his son's minority.

The property thus divided between his sons was worth something more than one-half of his whole estate, and was given to them as an advancement, the consideration being love and natural affection. At the time the father made this division of land between his sons, he was out of debt, and had, besides, in property and money, over twenty thousand dollars. Plaintiff's counsel, expressly stated, at the hearing, that they made no claim that insolvency or fraudulent intent upon the part of the father existed in 1869, when the transaction before related occurred. Abraham S. Matson, the father, at that time, was also curator of four minor wards, whose money, several thousand dollars, was loaned out on good security. This money was collected by him in 1877, though what time in the year does not clearly appear. Some of this money he did not pay to one of his wards at the time

she attained her majority, and thus the estate of plaintiff's intestate, in consequence thereof, had the sum of fifteen hundred dollars to pay ; this was, it seems, in 1879 or 1880.    In 1881, the plaintiff, as administrator of said surety, bondsman, brought suit against Abraham S. Matson for said amount thus paid, and in 1882 recovered judgment, upon which execution issued, and returned *nulla bona*.    There were also exhibited in evidence by plaintiff, at the time this cause was heard, December, 1884, allowances made against the estate of Abraham S. Matson, aggregating the sum of $8,072.07.    Also, various judgments rendered against him on notes, between September, 1877, and September, 1879, which judgments were afterwards allowed by the assignee.

In 1871, Matson wrote his son the following letter :

"St. Louis, Dec. 21, 1871.

"Dear Son, Richard C. Matson :

"This is to ratify what I always intended and promised to you, that if you would stay on the farm where you are now living, you should have full possession of all the Shobe tract, except the part I deeded to my son, William H. Matson, cornering with him, and lying on the north and east side and adjoining the Stewart Hall farm, with the houses and barns and outbuildings on the same, and you are to pay the taxes on same, and at my death you are to have full possession of the same, as your own land, as if this was a perfect deed to it.    This is not in true form of a deed, but it shall stand for one as though it were worded in full form, and be in full force.

"A. S. MATSON.

"Dear Son :

"As I am no scholar to draw a perfect deed to you, I am in hopes this will be satisfactory to you, as I do this for that purpose and your benefit.    You must be careful, and not spend your money unnecessary, and you will get along well after you get a start.    Times are hard.

now, and you cannot make it in one year. I do not intend to rob you of anything as to your part of what I leave at my death. You shall have your equal share of my estate with William H. and your mother, as I wish all to have equal parts of it as far as I can divide between you three. No more at present. All is well.

"A. S. MATSON."

This letter was shown, and found, to be genuine by the lower court. At the time the letter was written, it appears that Matson, the father, was solvent. Owing to depreciation in the value of his property, a stock-yard, he then owned, in consequence of its ceasing to be used by railroads as a point for delivery of cattle, he became embarrassed in circumstances, and was forced to make an assignment in 1878. Of the claims allowed by the assignee, $13,307.06, there was realized sufficient to pay forty-five per cent of such claims, or $5,943.17. The present cause was heard together with another, in which it was sought to set aside the deed made by the father to W. H. Matson in 1869, before Judges Thayer and Barclay, and the result was, in each instance, the bills were dismissed. This appeal questions the correctness of that ruling in the case at bar. It is well settled that where a party has been placed in possession of a tract of land, and on the faith of an oral gift of the same to him, has made valuable and lasting improvements thereon, this is a sufficient basis upon which the donee may compel a conveyance to him of such land. When he does this, it constitutes a valuable consideration, and he stands before a court of equity in the attitude of a purchaser and with equal rights and remedies; the donee's *status* in such case falling within the domain of the doctrine of part performance. Waterman on Spec. Perf., sec. 187; *Hardesty v. Richardson*, 44 Md. 617, and cas. cit.; *Freeman v. Freeman*, 43 N. Y. 34; *Kurtz v. Hibner*, 55 Ill. 514; *Neale v. Neale*, 9 Wall. 1. The same doctrine is recognized in *Rumbolds v. Parr*, 51 Mo. 592,

and in the earlier case of *Halsa v. Halsa*, 8 Mo. 303. In this case it is an obvious and conceded fact that the father, at the time he made the oral gift of land to his son, the defendant, was in a perfectly solvent condition. And in 1871 when the letter aforesaid was written, the evidence shows that he was also solvent, and so the court below found. I think, however, that the equity of the defendant may well be planted exclusively on the oral gift of 1869, followed as it has been by the son making such valuable and lasting improvements as the evidence shows he has made upon the premises in controversy, and evidently upon the faith of the consummation of the oral gift. In one of the cases cited above, it was ruled that, in order to the relief sought, it was not necessary to allege or to prove that improvements of a valuable and lasting character were made on the land upon an agreement or understanding that the land was to be thus improved as a condition of receiving a conveyance therefor; that it was sufficient that such improvements were made by the son with the knowledge of the father, and were induced by his promise to convey the land. *Hardesty v. Richardson, supra.*

Owing to the father's not being in embarrassed circumstances when he made the oral gift of the farm to his son in 1869, and to his being in a solvent condition in 1871, when he wrote the letter in question, it is wholly unnecessary to go into any discussion of his financial condition when he made the deed in 1877, now sought to be cancelled. The equities of the son at that time rested upon too firm a basis to be overturned by the subsequent and sudden financial reverses of the father. All that the father retained at the time he made the deed was the *bare legal shell*, worthless to creditors, and only beneficial to him who in equity was entitled to demand that that be done which the father of his own head did voluntarily. A view similar to the one here taken was held by this court in *Payne v. Twyman*, 68 Mo. 339, in which it was ruled

that where a husband had entered land in his own name with money belonging to the separate estate of the wife, and subsequently, when in embarrassed circumstances, conveyed the land to a trustee for her benefit, that this furnished no ground for complaint on the part of his creditors, since he had only done what equity would have compelled him to do.

Judgment affirmed. All concur, except Ray, J., absent.