WHITE *et al.*, *Plaintiffs in Error*, v. INGRAM *et al.*.

### Division One, June 6, 1892.

1. **Presumption.** The presumptions of law are in favor of the ordinary and usual methods of transacting business.

2. **Sale of Lands:** SPECIFIC PERFORMANCE: STATUTE OF FRAUDS. Defendant sold land to plaintiff, taking the latter's note upon a parol understanding that when plaintiff should marry the defendant's daughter, as it was expected he would do, the defendant would deliver up the note and make a conveyance to the daughter. Plaintiff and the daughter were afterwards married and moved upon the land where they resided for five years making valuable improvements. Defendant delivered up the note and caused a deed to be prepared reciting a consideration of love and affection and also of $100. This deed was, however, never executed because of domestic difficulties between defendant and his wife which terminated in a divorce. On several occasions defendant admitted giving the land to his daughter. *Held*, the evidence was sufficient to take the case out of the statute of frauds, and to warrant a decree for specific performance.

3. ——: ——: EVIDENCE. Statements made by the defendant after the equitable title to the land had attached in favor of the daughter were not competent to affect her rights.

4. ——: ——: ——. Nor were conversations or admissions of the daughter's husband, made in her absence, competent evidence to affect her equitable title.

5. **Dower:** DIVORCE. Where a divorce is granted for the husband's fault, the wife retains her dower right; but it is otherwise where the divorce is because of her fault.

*Error to Cape Girardeau Circuit Court.*—HON. H. C. O'BRYAN, Judge.

REVERSED AND REMANDED.

*John A. Hope* and *R. B. Oliver* for plaintiffs in error.

(1) The contract and promise made by William Ingram to Sidney White for the sale of this land was.

not a voluntary one. It was supported by a valuable consideration of a $600 note, to be surrendered upon the marriage of plaintiffs. Upon their marriage, the note was surrendered to plaintiff Sidney, and the deed to plaintiff, Mary A., was promised. Possession was taken by the plaintiff, in pursuance of this promise, and valuable improvements put upon the land, deeds made, officers sent to take acknowledgment of wife, and but for want of knowledge would have been executed. Where this is so, "equity looks upon that as done which ought to be done," and will enforce by decree the contract made. *Dougherty v. Horsel*, 91 Mo. 161; *West v. Bundy*, 78 Mo. 407; *Anderson v. Shockley*, 82 Mo. 250. (2) But, if it is treated as a voluntary executory promise from parent to child, we take it as well-settled law of this state: That an agreement for the gift of land will not be enforced against the donor upon proof alone of the promise to give. But where the donee has accepted the promise, entered into the possession of the land, made improvements upon the faith of the promise, the donor will be required to make good the gift. *Anderson v. Scott*, 94 Mo. 637; *Dougherty v. Horsel*, 91 Mo. 161; *Sitton v. Shipp*, 65 Mo. 297; *Hagar v. Hagar*, 71 Mo. 610. (3) The court erred in sustaining defendants' objection to the question put to witness Weinhold. The declaration of the defendant against his interest is competent, and the court's refusal to hear it is reversible error. *Glenn v. Lehner*, 54 Mo. 45. (4) This being a proceeding in equity, this court will review the evidence. *Benne v. Schnecko*, 100 Mo. 250; *Allen v. Logan*, 96 Mo. 591.

*Wilson Cramer*, *T. D. Hines* and *J. D. Limbaugh* for defendants in error.

SHERWOOD, P. J.—The plaintiffs, husband and wife, seek specific performance of a parol contract entered

into between the plaintiffs and one William Ingram, now deceased, the father of several of the defendants. Margaret Ingram is the former wife of William, from whom she obtained a divorce shortly before his death in 1887. The parties litigant are negroes. The defendants are not represented in this court.

The theory of the petition is a promise by William Ingram made to Sidney White, that if he would marry his daughter Amelia, who had won her dusky affections, and to whom he was then engaged, that he, the father, would convey to her the tract of sixty acres of land in question; that White had previously, or else concurrently with said promise, bought the land of William Ingram for the price of $600, for which sum he had executed this promissory note to Ingram; and the latter, upon the delivery of the note, promised that when White should lead his daughter to the hymeneal altar, in consummation of the mutual understanding and contract, Ingram would surrender to White the note he had given him, and would execute a deed conveying the land in controversy to his daughter; that the plaintiffs thereafter were married; that Ingram delivered the note to him; that plaintiffs moved upon the land, cleared and improved about half of it, and put it in cultivation, erected stables and outhouses, dug a cistern, planted out an orchard and paid all taxes on the land; that, owing to domestic troubles between Ingram and his wife, the promised deed was never made; though in January, 1887, some four years after the contract was made and the marriage occurred, and possession taken of the land and improvements made, Ingram caused a deed to be prepared to carry out his promise, but, owing to the domestic troubles aforesaid, no deed was ever made, and shortly thereafter Ingram died intestate.

The answer of the defendants was a general denial, and then pleaded that the supposed agreement was a

special promise in consideration of marriage, and for the sale of the lands and was not in writing, in compliance with the statute in such cases made and provided.

Margaret Ingram for her separate defense pleaded that she was the widow of William, and as such entitled to dower.   The reply was a general denial.

The hearing of this cause took place in 1889.   The evidence disclosed in substance this state of facts:   At the time of the transactions aforesaid, between Sidney White and William Ingram, the former was in possession of forty acres of the tract which he had bought of Charles Wilson and paid for, and was living on at the time of the occurrence of the matters alleged in the petition.   He was also trustee in a deed of trust given to secure William Ingram in the purchase money of sixty acres, a part of the same tract bought by Harrison McLane.   McLane failed to pay for the land, and Ingram ordered White to sell it, which he did as trustee, and Ingram bought the land at the sale; this was January 13, 1883.   Then the note for $600 was executed by Sidney White to Ingram, and thereupon White took possession of the sixty-acre tract of land, made improvements and paid taxes as already stated, and has been in the exclusive possession of that portion of the tract ever since.   In 1884 he married the daughter of Ingram. There is testimony that Ingram, who died, it seems, in 1887, repeatedly said in substance: "The place White lives on I gave to my daughter."   Such conversations are testified to by Mattingly.

Weinhold, one of the defendants, and the administrator of Ingram's estate, testified that Joseph Ingram, a son of William, and one of the defendants, had told him to the effect that his father had intended the sixty-acre tract for his sister, White's wife, and had the deed drawn up for the purpose, but it was never signed. Cora Ingram, another of the defendants, testified that

she heard her father tell her sister, Amelia White, when she went down to her father's house about a month or two before he died, that he had given the sixty acres to her,

Bonney testified that in 1887 he was a justice of the peace, and Wm. Ingram told him to prepare a deed for the land in litigation, and take it to his wife first and if she would sign it he would, and if she would not that it would do no good for him to sign it; that he accordingly prepared the deed, and took it to Ingram's wife to sign, but she refused to do so.

The deed thus referred to by Bonney, and which was prepared under the directions of Ingram, is dated the —— day of January, 1887, in which William Ingram and wife are named as grantors, and Mary A. White, one of the plaintiffs, and her bodily heirs, are named as grantees; the consideration, love and affection and $100 in hand paid, receipt of which sum is acknowledged. This occurred before the divorce between Ingram and wife. When Bonney prepared this deed, he had in his possession a deed which had been handed him by White in December, 1886; this deed is dated on the —— day of ——, 1883, in which William Ingram and wife are named as grantors, and Sidney White is named as grantee; consideration, $600. This unsigned deed was prepared by one Pepper. Upon Bonney's informing Ingram that the latter's wife would not sign the deed of 1887, Ingram told him that, as soon as a divorce was had between the parties, "I will get you to prepare another deed for my daughter and her heirs." In the same conversation, Ingram told Bonney that when Pepper prepared the deed of 1883, that Sidney White had executed a note to him, and that he had given it up to him. When the delivery of this note to White occurred does not appear. This note was in White's possession at the time the cause was heard.

Bonney also testified that in the same conversation Ingram told him to prepare another deed, "some of these days, shortly." At another time after a divorce had been granted to Ingram's wife, he told Bonney to prepare another deed, and he would sign it on his return from town; but when he returned he was not in a condition to do anything, and died soon thereafter.

In the conversation which took place between Ingram and Bonney after the divorce, when giving directions how the deed to Ingram's daughter was to be drawn, the latter said he wanted to make a little difference, that he would make the deed the same as the one of January, 1887, which Bonney had already prepared; but Sidney White must pay him the worth of a horse —did not say what amount.

The note in question was shown to J. M. Seibert, who testified that he drew the note for Sidney White to sign; that White signed the note, and that he subscribed his name as a witness to it. This note for $600 was drawn by Seibert at the instance of Ingram, just after the land had been struck off to Ingram, who came into the collector's office with White, and requested Seibert, who was the collector, to draw the note. This was in January, 1883. Seibert, it seems, had transacted considerable business for Ingram, who often came to him for advice; after the execution of the note was over Ingram invited Seibert out into the hall, where a conversation occurred between them, and, though Seibert cannot remember the conversation, which took place some years before the cause was heard, yet it was his impression at the time the conversation was, to the effect that Sidney White was courting Ingram's daughter, and in the event of their marriage the land in controversy was intended for her, and that the note was to be surrendered; that the note was a precautionary measure.

The note was then offered in evidence, was for $600, dated January 13, 1883, due one day after date, made payable to Ingram, and signed by White. This was the substance of the testimony offered by the plaintiffs.

On the part of the defendants, there was the testimony of McFadden, to the effect that on one occasion White told him that one time he and Ingram were talking, and he observed to Ingram that, if he would stop "remarking around the country that he was owing him for the land, he would pay him for it rather than have any trouble;" that statement by White was the same year Ingram died, and not many months before his death. This witness also testified that Sidney White had been in possession of the litigated tract since January, 1883, at the time McLane's interest was sold under the deed of trust. This witness also testified that Margaret Ingram had admitted to him that during her husband's lifetime Bonney came to her with a deed to land from her husband and herself to Amelia White to sign, but that she would not sign it, and that she admitted that her husband had intended to give the land to his daughter.

Margaret Ingram, the widow, testified to a conversation which she says she heard between Sidney White and her husband in February or March, 1887, after her divorce was obtained; that her husband told White that "he could not give him the land unless he would pay something on it; that he was not able, and that *he thought Sid. ought to give him something on it*," and that White thereupon replied, that "he would be willing to pay him something if he would not say anything more about it." She admitted that 'Squire Bonney came to her to get acknowledgment to a deed from her husband and herself to Sidney White and his wife, and she does

not deny that Bonney told her the deed was not for a moneyed consideration, but for love and affection.

This was the substance of the whole testimony, and at its close the court found the issues for the defendants, and the plaintiffs have brought the cause here on error.

### OPINION.

I.  The controlling question here is the correctness of the finding of the court below on the facts we have presented.

The presumptions of the law are in favor of the ordinary and usual method of transacting business. *Fitzgerald v. Barker*, 85 Mo. 13.  Hence, if the maker of the note have the same afterwards in his possession, the law presumes that the ordinary course of business has been followed, and that he has taken up his paper. 2 Greenleaf on Evidence [14 Ed.] sec. 527.

So that if the theory of an out and out purchase of the land in question be the proper one, then White, being in possession of the note, has made out a *prima facie* case of having paid the purchase money for the land.  But, if the theory be adopted that the note was to be surrendered to White on condition that he married Ingram's daughter, then the possession of the note and the marriage of the daughter by White are certainly very strong evidence that performance on White's part led to performance on Ingram's part; and then take the deed prepared by Bonney at the instance of Ingram in 1887, which recited a consideration of love and affection, and also of $100.  The testimony clearly shows that Ingram would have executed this deed had it not been for domestic troubles which had then sprung up between him and his wife.  These facts, taken with the verbal admissions made by

'VOL. 110—31

Ingram, that he had given the land to his daughter, as well as the exclusive possession taken of the land by White, and improvements made thereon by him, taxes paid and his remaining in possession of the land as his own some five years before he filed his petition, and the further admission by Ingram that Pepper had prepared the deed of 1883 and that he had surrendered the note to White, all go to make up a cause sufficiently strong to take the case out of the statute of frauds and warrant the relief plaintiffs seek. *Dozier v. Matson*, 94 Mo. 328, and cases cited.

II.    As to what Ingram said to Bonney after his wife obtained a divorce, about having a deed prepared a little different from the one of 1887; that Sidney White must pay him the worth of a horse, etc., no importance is to be attached, if it be true that the bargain made between Ingram and White for the benefit of the latter's wife had previously been consummated as aforesaid, as we take it was actually the case.

After the consummation of the contract, it was out of the power of Ingram by anything said or done by him to countervail the consummated equities of his daughter. Relying as she might on an oral gift and on the doctrine of part performance, she stood before a court of equity in the attitude of a purchaser for a valuable consideration, with equal rights and remedies. *Dozier v. Matson, supra*, and cases cited.

III.    Nor could the conversations or admissions of White, the husband, after his wife had acquired by reason of the facts aforesaid an equitable title to the land, affect her rights in any manner whatever. They were made in her absence, and so could not in any event bind her. Her equities having been acquired after the enactment of section 6868, Revised Statutes, 1889, of the married woman's act, even his sole deed could not affect or prejudice her rights, and certainly his

verbal admissions, even if made in her presence, could do no more. *Hord v. Taubman,* 79 Mo. 101; *Mueller v. Kaessmann,* 84 Mo. 318; *Henry v. Sneed,* 99 Mo. 407.

And for the reason just given, and upon the authorities just cited, if the admissions of the husband could not prejudice his wife's title, no more could it prejudice his, if he had any. But it is not thought that such loose expressions as are attributed to the husband ought, in any event, to have any effect whatever. *Ringo v. Richardson,* 53 Mo. 385, and cases cited; *Berry v. Hartzell,* 91 Mo. 136. Nor does it really appear that his expressions were anything more than the declaration of a willingness to pay something in order to avoid trouble.

IV. But notwithstanding that the equities of White's wife and coplaintiff are clear, and stand out in bold relief, as against the heirs of the deceased, yet as much cannot safely be said against the dower right of the widow. Her dower right undoubtedly still exists, unless she was deprived of it by reason of the divorce proceedings. If a divorce was granted her because of the fault of her husband, then she still retains her dower right. R. S. 1889, sec. 4508; *Hunt v. Thompson,* 61 Mo. 148. But, if the divorce were granted him for her fault, then her dower right is gone. *Gould v. Crow,* 57 Mo. 200. It is impossible to determine from this record how this divorce matter stands.

The judgment will be reversed, and the case remanded with directions to enter a decree for specific performance in favor of the plaintiff, Mary A. White, but, if the widow, Margaret Ingram, has not forfeited her dower right, that right will be accorded to her by suitable proceedings. All concur.