Glenda D. KEEN, Plaintiff-Respondent,

v.

Otella G. DISMUKE,
Defendant-Appellant.

No. 13910.

Missouri Court of Appeals,
Southern District,
Division Three.

April 15, 1985.

Motion for Rehearing or to Transfer
Denied May 6, 1985.

Stephen L. Taylor, Gilmore, Gilmore, Taylor & Burns, Sikeston, for defendant-appellant.

Joseph P. Fuchs, Dempster, Fuchs & Barkett, Sikeston, for plaintiff-respondent.

FLANIGAN, Judge.

Plaintiff Glenda Keen brought this action against her mother, defendant Otella Dismuke, to terminate an oral month-to-month tenancy and to obtain possession of a house and lot in Sikeston. The parties stipulated that legal title was in plaintiff and that plaintiff served upon defendant a timely notice to terminate. Defendant's answer admitted that she was in possession of the property but alleged that she had obtained title thereto by adverse possession and, further, that plaintiff, in July 1971, "orally conveyed" the property to defendant. By counterclaim defendant sought a decree quieting the title in defendant on the alternative grounds of adverse possession and gift. The action was filed on March 18, 1983, and tried on June 6, 1983. The trial court, sitting without a jury, found the issues in favor of plaintiff, awarded plaintiff possession of the property, and denied defendant relief on the counterclaim. Defendant appeals.

Defendant's first point is that the trial court erred in awarding plaintiff possession of the property because there was no substantial evidence to support the judgment in that defendant had been in possession of the property more than 10 years before the filing of the action, defendant established title by parol gift and by adverse possession, non-party witnesses supported defendant's version of her possession and defendant had paid for repairs and improvements and had paid the taxes and insurance from the last quarter of 1971 through August 1982.

Plaintiff and her husband obtained title to the house in 1964 and lived there, with their five children, until 1969 when plaintiff and her husband were divorced. The husband then conveyed his interest to plaintiff. During these years defendant also lived in the house. The house was mortgaged and the monthly loan payment, from 1964 through the time of trial, was "around $70," which included taxes and insurance.

In August 1971 plaintiff and her children moved to Florida and the house remained vacant thereafter "for at least 90 days."

824

Late that year defendant moved back into the house with plaintiff's permission and remained there until the spring or summer of 1972 when plaintiff "moved [defendant] to an apartment" and plaintiff "put the house up for sale." The house remained vacant for about six months beginning in the summer of 1972. On March 1, 1973, a tenant, Shad Old, moved in and stayed for six months. Plaintiff testified that she rented the house to Old. Old's rent was $85 a month and plaintiff arranged with defendant for defendant to collect the rent and use it to make the loan payment. Defendant was permitted to keep the excess. After Old moved out, another family moved in and stayed six months. The monthly rent was then $125 and again defendant made the loan payment and kept the balance.

Defendant moved back into the house in early 1974. According to plaintiff the arrangement was that defendant "would make the mortgage payments as her rent," and defendant did so.

Although both plaintiff and defendant claimed to have paid for repairs to the house, they agreed that in August 1981 plaintiff paid Herman Grimes $750 to fix the foundation.

In attempting to prove her theory of gift, defendant relied upon conversations she had with plaintiff. Defendant said, "She told me that I could have the house to live and keep up.... She told me that she would give me the house to keep up and things if I would live there and keep it up and take care of it." Defendant, under cross-examination, testified as follows:

"Q. And at that time, she told you you could continue to live there as long as you made the payments?

A. (No response.)

Q. And that's what you did?

A. That's what I did."

Defendant offered the testimony of plaintiff's ex-husband, plaintiff's son (defendant's grandson), and another witness to the effect that plaintiff had stated that she had given the house to defendant. Defendant testified that plaintiff gave her the house "even though we didn't get along."

■ In varying factual situations Missouri courts have upheld claims to ownership of land which were based upon the theory of parol gift. *Auldridge v. Spraggin,* 349 Mo. 858, 163 S.W.2d 1042 (1942); *Thierry v. Thierry,* 298 Mo. 25, 249 S.W. 946 (1923); *Hubbard v. Hubbard,* 140 Mo. 300, 41 S.W. 749 (1897); *White v. Ingram,* 110 Mo. 474, 19 S.W. 827 (1892); *Dozier v. Matson,* 94 Mo. 328, 7 S.W. 268 (1888); *Armold v. Lang,* 11 F.2d 630 (D.Mo.1926). In the typical case where the gift has been upheld, the donee, induced by the promise of the gift, has taken exclusive possession of the land and made valuable and permanent improvements, thereby rendering it inequitable for the donor to deny the gift or to rely upon the statute of frauds. In other cases the evidence was insufficient to support a finding of parol gift and the claim of the alleged donee has been denied. *Dalton v. Willis,* 360 Mo. 329, 228 S.W.2d 709 (1950); *Stewart v. Stewart,* 262 S.W. 1016 (Mo.1924). See generally 83 A.L.R.3d 1294 Statute of Frauds—Oral Gifts of Land; 43 A.L.R.2d 6 Adverse Possession Under Parol Gift of Land. A person claiming title to land by parol gift has the burden of proving the gift "by clear and convincing testimony." *Dalton v. Willis,* supra, at 711.

■ The trial court found that the defendant "is in possession of [the house and lot] by virtue of a rental agreement with [plaintiff]." Plaintiff's testimony, although contradicted by defendant, was sufficient to support that finding. Plaintiff denied making any statements evidencing an intention to give the property to defendant. Even the statements attributed to plaintiff by defendant were equivocal and conditional and of course the trial court was at liberty to reject that testimony. The trial court properly could have found that defendant's evidence, in support of her theory of parol gift, failed to meet the "clear and convincing" standard.

■ With respect to defendant's alternate theory of adverse possession, defendant had the burden of proving by the preponderance of the evidence the existence, for the statutory period, of every element of adverse possession. This required a showing of "actual, hostile (i.e. under a claim of right), open and notorious, exclusive and continuous possession of the disputed land for ten years." *Heide v. Sheeks*, 682 S.W.2d 877, 878[1] (Mo.App. 1984). Failure to prove any element prevents the ripening of title by adverse possession. *Teson v. Vasquez*, 561 S.W.2d 119 (Mo.App.1977).

"Since there was no gift of the land in question, [defendant's] possession was with permission of [plaintiff].... Permissive possession is not adverse possession." *Dalton v. Willis*, supra, at 711. Also fatal to defendant's theory of adverse possession was her failure to show continuous possession for 10 years. The evidence justified the trial court in finding that the renting of the premises to Shad Old and the subsequent tenant destroyed the continuity of defendant's possession.

Defendant also argues that the judgment is against the weight of the evidence. Although this court has the power to set aside the judgment on the ground that it is against the weight of the evidence, the power should be exercised "with caution and with a firm belief that the judgment is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court has no such firm belief. Defendant's first point has no merit.

■ Defendant's second point is that the trial court erred in receiving into evidence, over defendant's objection, testimony of plaintiff's rebuttal witness Emma Bohannon, a case worker with the Division of Family Services, concerning the contents of the records of the division pertaining to defendant.

The challenged testimony in essence was that in 1977 defendant informed the division that defendant "is renting from her daughter" and claimed an expense for rent. The witness also testified, "According to the record that I have there has never been any [real estate] claimed [by defendant]."

The objection was based on § 208.120.1 which reads, in pertinent part: ·

"1. ... In any judicial proceedings, except such proceedings as are directly concerned with the administration of these programs, such information obtained in the discharge of official duties relative to the identity of applicants for or recipients of benefits, and records, files, papers, communications and their contents shall be confidential and not admissible in evidence."

The statute made the challenged testimony inadmissible. In a court-tried case, however, it is presumed that the trial court considered only the evidence properly received, *In re Richard*, 655 S.W.2d 110, 113[6] (Mo.App.1983), and the erroneous admission of evidence requires reversal only when there is an absence of sufficient competent evidence to support the judgment. *Nunn v. Nunn*, 644 S.W.2d 370, 373[6] (Mo.App.1982). This court, on review of a court-tried case, considers only the evidence which was properly admitted and ignores that which was improperly admitted. *Blair v. Blair*, 600 S.W.2d 143, 146[7] (Mo.App.1980).

■ Ignoring the testimony of witness Bohannon, this court finds that the judgment is supported by substantial evidence and is not against the weight of the evidence. Defendant's second point has no merit.

The judgment is affirmed.

PREWITT, C.J., and TITUS and MAUS, JJ., concur.

CROW, J., recused.