**STATE of Missouri, ex rel. William L. WEBSTER, Attorney General,. Plaintiff-Respondent,**

v.

**Frank C. CORNELIUS, et al., Defendants-Appellants.**

**No. 51941.**

Missouri Court of Appeals, Eastern District, Division Three.

May 5, 1987.

Appleton, Newman & Terson, Alan G. Gerson, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Jefferson City, Peter Lumaghi, Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

This is an appeal from an order entered July 2, 1986 by Honorable Edward M. Peek, judge of the Circuit Court of St. Louis. Pursuant to the Missouri Merchandising Practices Act, Chapter 407 RSMo 1978, appellants were permanently enjoined and prohibited from soliciting advertisements or any related type of sale with respect to law enforcement journals or charitable organization without a written contract authorizing this representation. Appellants were further ordered to make full restitution with 10% interest to individuals filing affidavits of financial loss and pay attorney's fees and cost.

In order for the facts of this case to be easily understood, it is important to start with a brief discussion of who the important figures in this case were. O.S.C. Corporation is a Massachusetts corporation that engaged in business in Missouri publishing and soliciting advertisements for publications relating ostensibly to state highway patrol organizations. The president of O.S.C. was David Zucker. Both of these parties were named defendants but they were dismissed from the case by the plaintiff before trial. Appellant Lester Gardner was an officer of C.S.C. in 1983 and 1984 with the title of "vice-president or vice-chairman." Mr. Gardner actively participated in all aspects of O.S.C.'s operations. Defendant Troopers Benefit Association, Inc., (T.B.A.) is a Missouri corporation, established in September of 1984. Defendant Troopers Benefit Association, Inc., of Indiana (T.B.A., Indiana) is not a Missouri corporation. Both of these corporations were established to provide benefits to state highway patrolmen.

Appellant Frank C. Cornelius is the president and owner of T.B.A. and T.B.A., Indiana. Defendant Main Street Publishing of Missouri, Inc., (Main Street) is a Missouri corporation established in July of 1984 that engaged in the publishing and solicitation of advertisements for publications relating ostensibly to state highway patrol organizations. Missouri State Troopers Association (M.S.T.A.) is an organization representing approximately 65% of the Missouri State Highway Patrol. M.S.T.A. was established in August of 1981.

The first significant event relating to this case occurred in June of 1982. At that time M.S.T.A. contracted with O.S.C. to make advertisement solicitations and publish "The Missouri Trooper," the quarterly news magazine of M.S.T.A. M.S.T.A. was to receive 20% of the advertising revenue with the remainder going to O.S.C.

Soon after solicitations began, M.S.T.A. began receiving various complaints concerning the way O.S.C. was handling the solicitations. M.S.T.A. subsequently relayed this information to Zucker and defendant Gardner. On October 28, 1983, M.S.T.A. notified O.S.C. and Zucker that it was terminating its contract with O.S.C. due to the many complaints that it had received concerning O.S.C. practices.

On January 26, 1984, O.S.C. filed suit against M.S.T.A. in federal district court to enforce the terms of the contract. On January 11, 1985, the federal district court ruled in favor of M.S.T.A. and permanently enjoined O.S.C., its officers, agents, servants, employees, attorneys and all those persons in active concert or participation with it, from using the name, "The Missouri Trooper," or any confusingly similar designation as a trademark, or otherwise to publish, sell or advertise such name in any magazine, book or publication of any type.

At trial, testimony showed that on January 1, 1985, David Zucker had O.S.C.'s operations in Missouri change its name to Main Street Publishing in order for O.S.C.

to continue its operation in Missouri. Main Street then began soliciting advertisements for a trooper magazine. Prior to this, appellant Gardner had ordered the office to be moved because they had been evicted from their office for failure to pay rent. Testimony at trial indicated that pursuant to instructions from Gardner different business names and addresses were frequently used to avoid paying rent and utility bills.

After the court order, Main Street stopped soliciting directly for M.S.T.A. Instead they turned their attention to the newly formed T.B.A. of Missouri. In their solicitations for T.B.A. of Missouri, Main Street continued to solicit advertisements using the same sales pitch that had been used to solicit advertising for M.S.T.A.

At trial a number of witnesses testified as to the solicitation practices of Main Street. Usually a telephone solicitor would contact an individual or a business and ask them to place an advertisement in a trooper magazine. The contacted person was usually told by the solicitor that they represented the "Troopers Benefit Association for the Missouri Troopers," the "Missouri State Troopers Association," or the "Missouri Troopers Association." At no time were the contacted parties informed that the solicitors were not representing the highway patrol or M.S.T.A., or that those organizations had not sanctioned the use of their name. The contacted parties were additionally informed that the proceeds would be used to benefit widows and families of Missouri State Troopers killed in action or to fund a drunk driving program in Missouri. At no time were any of the collected funds used to further these objectives. Also M.S.T.A. did not receive any funds from any solicitation done by O.S.C. or Main Street after April 13, 1984 even though solicitations continued through January of 1985. Moreover, the "Missouri Trooper" magazine was last published in July-August of 1984. Advertisements solicited after this time were never published.

Another activity appellants and Main Street were engaged in was the promoting and selling of tickets to a sports show for the benefit of the troopers. The sports show was to feature players from the St. Louis Football and Baseball Cardinals. Main Street did not make arrangements for the sports personalities to appear. Nor did it plan to carry out the sports show even though they had sold tickets to the show and made representations that the personalities would be there.

Appellants' first point is that the trial court's judgment was not supported by substantial evidence that appellants either individually or with other defendants engaged in any actions proscribed by Chapter 407 RSMo 1978 or committed willful violations of the act.

■ The standard for review of a court tried case has been well established in Missouri. The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Section 407.020 provides that an unlawful practice is:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise is declared to be an unlawful practice.

■ This statute was construed in *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 368 (Mo.App. 1973), wherein it was held that the purpose of the statute:

> is to supplement the definitions of common law fraud in an attempt to preserve fundamental honesty, fair play and right dealings in public transactions. In order to give broad scope to the statutory protection and to prevent ease of evasion because of overly meticulous definitions, many of these laws such as the Missouri statute 'do not attempt to define deceptive practices or fraud, but merely de-

clare unfair or deceptive practices unlawful ...' Commerce Clearing House, Property law Rep., Vol. 1, ¶ 3200, leaving it to the court in each particular instance to declare whether fair dealing has been violated.

This court has further stated that it is not the person's intent that is determinative of the remedial provisions of Chapter 407 but rather that the defendants' conduct constituted unfair practices. *State ex rel. Ashcroft v. Marketing Unlimited*, 613 S.W.2d 440, 447 (Mo.App.1981). Unfair practices do not have to be proven by the establishment of the elements of common law fraud. The injunctive relief provided for in § 407.-100 is remedial, not punitive, and therefore the statutes should be given a liberal construction. *Id.* at 445.

■ Upon an examination of the record before us, the facts clearly establish that appellants' conduct as well as the conduct of their agents constituted unlawful practices within the definition of § 407.020.

Evidence illuminated that a number of people were actually mislead by the representations made to them. These witnesses testified that they had been contacted by a solicitor who claimed to be representing M.S.T.A. These witnesses bought advertisements in a trooper magazine ranging in price from twenty-nine dollars ($29) to forty dollars ($40). These witnesses further testified that if they had known the true relationship between M.S.T.A. and Main Street Publishing or T.B.A. of Missouri that they would not have purchased the advertisements. Evidence further showed that these advertisements were never published in any magazine.

Appellant Gardner was in continuous contact with the operation in St. Louis. Edward Tabachini, a manager for Main Street Publishing, testified that Gardner was his direct supervisor and was involved in every aspect of the operation. Tabachini testified that Gardner had directed him to begin solicitation of advertisements for T.B.A. of Missouri in January of 1985. Though they were no longer soliciting on behalf of M.S.T.A. they continued to use its name while soliciting for T.B.A. of Missouri. In addition to the testimony of the witnesses who had purchased advertisements, two incidents further illustrate this point. First, on January 16, 1985 Donald Sita was stopped and interrogated by Missouri Trooper Bryan K. Wilson. Sita was stopped in response to complaints "of persons in the area collecting money for the Missouri State Highway Patrol or the Trooper Association." During the interrogation several items were seized from Sita. Among these items were three copies of the "Missouri Trooper Magazine" and Sita's identification card which contained the language "Missouri State Troopers Association, Inc.—The Missouri Trooper." The identification card had an effective date of January 1, 1985 to December 31, 1985. Sita was carrying an M.S.T.A. identification card that stated that he was employed by Main Street Publishing to collect money for advertisements from numerous businesses. The second incident occurred shortly thereafter. As a result of the same complaints, Lawrence Kinnerly was also stopped and interrogated by the state police. Seized from him at the time were three checks from potential advertisors who testified they believed the proceeds were going to the Missouri Troopers Association and that the advertisement would be placed in the Missouri Trooper Magazine. These incidents clearly indicate that Main Street Publishing under the direction of appellant Gardner continued to solicit advertising using the name of M.S.T.A. and the Missouri Trooper Magazine after it had been enjoined from doing so.

Concerning appellant Cornelius, at all times he was owner and president of T.B.A. of Missouri. Appellant Cornelius testified T.B.A. had hired Main Street to solicit and sell advertising and publish its publication. In January of 1985, Main Street on behalf of T.B.A. began selling tickets to and promoting a sports show featuring local sports personalities. Appellant Cornelius testified he had not contracted with any sports personalities to appear at the sports show even though he had represented to Captain Ford, Commander of Troop C, that he had. Appellant Cornelius also testified that benefits that were

represented to be available to members of T.B.A., including lobbying efforts, group travel plans, free seminars, legal aid, death benefits, etc. were either not provided or not available.

■ Appellants argue that the testimony of respondent's key witness, Edward Tabachini, lacked any credibility and should not have been relied on. This type of argument is without merit. Credibility of the witness is for the trial court and we may not substitute our judgment for that of the trial court. *Stratton v. Stratton,* 694 S.W.2d 510, 512 (Mo.App.1985). The trial court is in a better position not only to judge the credibility of witnesses directly but also their sincerity and character as well as intangibles which may not be reflected in the record. *Mazurek v. Mazurek,* 575 S.W.2d 227, 229 (Mo.App.1978).

Appellants also argue that we should follow the analysis of the court in *State ex rel. Ashcroft v. Wahl,* 600 S.W.2d 175 (Mo.App.1980). That case is distinguishable and is not applicable. In that case no evidence was brought to show that defendants had violated any elements of Chapter 407 RSMo. Here ample evidence was introduced to establish that appellants had used false promises and deception in soliciting advertisements in violation of Chapter 407 RSMo.

■ Appellants' second argument is that the judgment of the trial court was against the weight of the evidence and should be reversed. The appellate court must give deference to the trial court in a judge tried case. *Murphy v. Carron* at 32. As previously set forth, the evidence clearly establishes that appellants were involved in deceptive practices in violation of Chapter 407 RSMo. The judgment of the trial court was not against the weight of the evidence. The point is devoid of merit.

■ Appellants' third argument is that the trial court erred by permitting evidence relating only to named defendants O.S.C. and David Zucker, who were never served, permitted to enter an appearance, or made parties to the case, to be admitted against appellants. In a court tried case it is pre-sumed that the trial court considered only properly received evidence and the erroneous admission of such evidence requires reversal only when there is no sufficient competent evidence to support the trial court's judgment. *Keen v. Dismuke,* 690 S.W.2d 822, 825 (Mo.App.1985). In reviewing a court tried case, the appellate court only considers properly admitted evidence and ignores that which was improperly admitted. *Id.* Accordingly the question before us on review becomes whether there was sufficient other evidence competent to support the trial court's judgment. Having determined herebefore that there was sufficient evidence for the trial court to base its judgment, we find appellants' argument is without merit.

Finally, appellants argue that the trial court erroneously declared the law applying the revision and amendments to Chapter 407 RSMo retrospectively in finding that appellants had willfully violated the act and in ordering appellants to pay restitution as well as plaintiff's investigatory cost, attorneys fees and incidental expenses. The revisions became effective May 31, 1985 after commencement of the action and after entry by the court of its temporary restraining order and preliminary injunction.

■ Article I, § 13 of the Missouri Constitution prohibits the enactment of any law retrospective in its operation. A retrospective law is one that relates back to a previous transaction giving it a different effect from that which it had under the law when it occurred. *Gonzalez v. Labor and Industrial Relations Commission,* 661 S.W.2d 54, 56 (Mo.App.1983). There are, however, two recognized exceptions to the rule that a statute shall not be applied retrospectively: (1) where the legislature manifest a clear intent that it do so, and (2) where the statute is procedural only and does not affect any substantive right of the parties. *State ex rel. St. Louis-San Francisco Ry. Co. v. Buder,* 515 S.W.2d 409, 410 (Mo. banc 1974).

In addressing the first exception, we can find no indication that the legislature intended the statute to apply retrospectively.

As to the second exception, rights which are substantive and cannot be applied retrospectively are those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability. *State ex rel. St. Louis-San Francisco Ry. Co. v. Buder* at 410.

Under § 407.130 RSMo 1978, the trial court was permitted to award court cost to the attorney general for the use of the state. Subsequent to the 1985 amendment, § 407.130 entitled the attorney general to recover as costs, in addition to normal court costs, the costs of the investigation and prosecution of any action to enforce the act. Additionally, § 407.140 was added which allows the trial court to add ten percent (10%) to any award damage under § 407.100.

The amended statute attaches a new disability to the appellants. Appellants' acts at the time of commission were subject to liability only in the amount of normal court costs and restitution for any ascertainable losses. The additional fine of ten percent interest and the additional investigation and prosecutory cost are clearly punitive in nature. Laws providing for penalties and forfeitures are always given only prospective application. *U.S. Life Title Ins. Co. v. Brents,* 676 S.W.2d 839, 842 (Mo.App.1984).

Therefore, we reverse that part of the trial courts order granting ten percent interest payments and investigatory, prosecution and attorneys' cost.

It should be noted that this opinion does not disturb that part of the order granting restitution to injured parties. Those injured may still seek relief under the trial court's order consistent with this opinion.

The order of the trial court is affirmed in part and reversed in part.

CRANDALL and KAROHL, JJ., concur.