**STATE of Missouri, ex rel., William L. WEBSTER, Attorney General of the State of Missouri, Plaintiff–Respondent,**

v.

**AREACO INVESTMENT COMPANY, a Missouri Corporation, d/b/a Rocky Ridge Ranch Resort, Defendant–Appellant.**

**No. 53253.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 6, 1988.

Dana A. Hockensmith, Hillsboro, Evan J. Beatty, St. Louis, for defendant-appellant.

Ralph Lane Goodard, St. Louis, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from the judgment entered in a court-tried case finding that defendant violated the provisions of Chapter 407 RSMo., the Merchandising Practices Act. The court issued injunctive relief, rescission of contracts, and awarded the Attorney General his costs in investigating and prosecuting the matter.

Defendant owns and operates Rocky Ridge Ranch Resort in Ste. Genevieve County. It sells memberships to use the facilities of the resort. It solicits customers by the use of random mailings. As an inducement to visit the resort and be subjected to a sales presentation, the mailings indicate that the recipient will be awarded one of the gifts listed in the mailing. The gift is awarded after a mandatory tour and sales presentation. The defendant hires outside companies to handle the mailings and the selection of gifts. From 1984 through 1986 over a million mailings were made, over 21,000 people visited the resort as a result of the mailings and 1675 mem-

berships were sold. Three categories of memberships were sold, i.e., wilderness, charter, and executive. Exhibits in the record reflect prices ranging from $3500 to $6500.

The State alleged that defendant offered for sale "merchandise" as that term is defined in Sec. 407.010 and in connection with those offers engaged in deception, fraud, false pretense, false promise, misrepresentation and suppression and omission of material fact, all prohibited by Sec. 407.020. The petition then set forth eight specific misrepresentations. After hearing, the trial court entered its findings of fact, conclusions of law, and order. It found seven specific areas of misrepresentation and permanently enjoined defendant from misrepresenting those areas in the future. It also rescinded the contracts of ten customers and ordered refunds of all monies paid pursuant to those contracts. It further awarded the Attorney General $4170 for his attorney's fees, investigatory and incidental expenses. This monetary award was based upon an affidavit submitted after the hearing.

Defendant first contends that the trial court "erroneously declared and applied the law as set out in Sections 407.020, 407.100, and 407.130 ... ." We would be justified in denying this point on the basis that it fails to set forth "wherein and why" the court erred. Rule 84.04(d). From the argument portion of the brief, we gather that defendant premises this allegation of error upon a conclusion that the conduct established was not misleading, that defendant had no intent to deceive, and that there was no reliance by customers established in the record.

Our review is under the established principles of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) [1–3]. Sec. 407.020.1 RSMo 1986, provides:

"The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... is declared to be an unlawful practice ... . Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation."

It is the purpose of this section "to supplement the definitions of common law fraud in an attempt to preserve fundamental honesty, fair play and right dealings in public transactions." *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362 (Mo.App.1973) [7–9]. Sec. 407.020 does not define deceptive practices; it simply declares unfair or deceptive practices unlawful. This was done to give broad scope to the meaning of the statute and to prevent evasion because of overly meticulous definitions. This leaves to the court in each particular instance the determination whether fair dealing has been violated. *Id.; State ex rel. Webster v. Cornelius*, 729 S.W.2d 60 (Mo.App.1987) [2, 3]. It is the defendant's conduct, not his intent, which determines whether a violation has occurred. *State ex rel. Ashcroft v. Marketing Unlimited of America*, 613 S.W.2d 440 (Mo.App.1981) [4]. It is not necessary in order to establish "unlawful practice" to prove the elements of common law fraud. *Id.* [1].

What we have said disposes of defendant's contention that absence of intent precludes a finding of unlawful practice. We also do not find that proof of reliance by customers is a necessary element of such cases. There is dicta in *State ex rel. Ashcroft v. Wahl*, 600 S.W.2d 175 (Mo.App. 1980) 1.c. 176, which appears to indicate the contrary. That dicta is based upon the difference between the Missouri statute and those of Kansas and New Jersey both of which explicitly provide "whether or not any person has in fact been misled, deceived or damaged thereby ... ." We believe that analysis overlooks the language in Sec. 407.020.1 that a violation of that subsection exists whether the act, use or employment is committed "*before*, during or after the sale, advertisement or solicitation." Further Sec. 407.100 allows the Attorney General to seek an injunction when

it appears that a person "has engaged in, is engaging in, or *is about to engage in* ..." any unlawful practice. (Emphasis supplied). It is difficult to conceive how reliance can be an element of a cause of action which may be commenced before defendant has even begun advertising or solicitation. Having concluded that intent and reliance are not necessary elements of the cause of action, it is unnecessary for us to determine whether they have in fact been established.

We turn to defendant's conduct. There was evidence that the mailers described certain of the gifts in what can be charitably denominated a misleading way. A "blue fox fur coat" was in fact synthetic. A child's plastic vinyl raft was described as a "two man boat". A "Singer sewing machine" turned out to be a seam and hem tacker. A "frost-free refrigerator" turned out to be a small plastic cooler with a cigarette lighter plug-in attachment. That "refrigerator" was described in the mailer as requiring the recipient to pay a fifty dollar delivery charge, clearly indicating it was something considerably larger and more valuable than it turned out to be.

■ During the escorted tour and sales presentation certain representations were made to customers. They were told that it was necessary to purchase memberships in order to buy a lot. Defendant did not, at the time of these representations, sell lots; they were available, however, from private citizens who had previously purchased them from defendant. Defendant's officers admitted that such representations were untrue but stated they had told their employees not to make such representations. There was evidence that employees were instructed by the officers to make such representations. There was evidence that prospective customers were told that defendant would help them resell memberships if they wished to dispose of the memberships. This was admittedly untrue and defendant was in the business of selling original memberships, not selling those of existing members. Customers were told that their memberships would increase in value. There was no evidence

that such would happen and the officers testified that such statements would be untrue. In the closing sale documents there were statements that memberships should not be purchased as an investment other than an investment in family recreation. There were also disclaimers in the closing documents concerning resale of memberships by defendant. Several witnesses testified they did not carefully read the closing documents in part because of pressure to quickly consummate the transaction. Prior and contemporaneous oral statements are not merged into the written contract when the fraudulent representations were made for the purpose of inducing a party to enter into the contract. *Maples v. Charles Burt Realtor, Inc.*, 690 S.W.2d 202 (Mo.App.1985) [16]. Further, the statute prohibits the use of any misrepresentation or deception in connection with the sale. If such misrepresentations or deceptions are made, the statute has been violated whether or not the final sales papers contain no misrepresentation or even correct the prior misrepresentation.

■ There was evidence that on at least one occasion a prospective customer was told that he must purchase a membership in order to claim his gift, contrary to the mailer. There was evidence that prospective customers were advised that certain amenities were in existence or were planned and would be completed in the near future. These included additional condominium units for use by members, a miniature golf course, additional beaches, and snow making equipment for the ski-slope. Representations were made that boat storage facilities were available and that there were stables. Boat storage was an open field and there were stables but no horses. None of the promised additional amenities had been constructed by the time of trial.

Defendant advanced various explanations for all of the charged misleading statements. The trial court found the defendant misrepresented and mislead. There was evidence to support those findings and they are not against the weight of the evidence. The court correctly found

that this conduct constituted unlawful practices.

Defendant next contends injunctive relief should not have been granted. As we have previously stated, the evidence supported a finding that each of the seven areas of conduct enjoined involved misrepresentations or misleading statements, acts, or conduct. Sec. 407.100 authorizes such an injunction and we find no abuse of discretion by the trial court in granting such relief. *State ex rel. Danforth v. Independence Dodge, Inc., supra* [16].

Defendant next complains of the rescission of contracts for ten persons who testified and the court's order that "all monies paid pursuant to those contracts be refunded ... ." One of the witnesses named in the decree had not in fact purchased a membership and, of course, he is not entitled to a refund. But the wording of the decree is such as to protect defendant from having to refund money to that individual.

■ Sec. 407.100.4 provides that "[t]he court, in its discretion, may enter an order of restitution, payable to the state, as may be necessary to restore to any person who has suffered any ascertainable loss, including but not limited to, any moneys or property ... which have been acquired by means of any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter." This is a remedial statute to be liberally construed. *State ex rel. Webster v. Cornelius, supra,* [2, 3]. Defendant contends that the record does not establish that some or all of the customers involved relied upon misrepresentations in purchasing their memberships. While several of the cases, in approving restitution, refer to the customer's reliance, we find no case in Missouri which has held that reliance on a specific misrepresentation is required. *See, State ex rel. Ashcroft v. Marketing Unlimited of America, supra,* [2]; *State ex rel. Webster v. Cornelius, supra,* [4]; *State ex rel. Danforth v. Independence Dodge, Inc., supra,* [12, 14].

■ A decision to purchase a membership in Rocky Ridge would not normally turn on a single inducement. It is the overall package that defendant is attempting to make attractive. If he does so by misrepresentations or misleading information, he is engaging in an unlawful practice. Memberships sold by such devices result in money being acquired by defendant by means declared unlawful under the statute. The statute advises him that he may be required to disgorge money so acquired. The entire thrust of the Merchandising Practices Act is that consumers rely upon the fair dealing of those selling merchandise and services. When that fair dealing obligation has been breached, the customer may, in the discretion of the court, rescind the transaction. It is presumed from the statute that the customer has relied upon the obligation of fair dealing in making his purchase. We find no abuse of discretion in the trial court awarding rescission and restitution.

The record, however, is not clear that all of the witnesses testifying wanted rescission and termination of their memberships. There was no evidence adduced of specific ascertainable losses other than the money paid for the memberships. Upon remand the trial court can ascertain which of these witnesses desire rescission relief and the amount each is due if rescission is granted.

Defendant's final point challenges the award of costs to the Attorney General. Sec. 407.130 clearly authorizes such an award. The only evidence of the costs incurred by the Attorney General was an affidavit filed at the court's request after the hearing. In the absence of a stipulation there is no authority for treating affidavits as evidence. *State ex rel. O'Connell v. Crandall,* 562 S.W.2d 746 (Mo.App. 1978) [n. 5]. There was no stipulation here. The defendant is entitled to an opportunity to challenge the amount requested by the Attorney General. The amount awarded is unsupported by any evidence. It is clear from the record that the Attorney General has incurred some statutorily recoverable costs. The cause must be remanded for further evidence of the costs.

The judgment granting a permanent injunction is affirmed. The judgment granting rescission and costs is reversed and remanded for further proceedings consistent with this opinion.

KAROHL, P.J., and KELLY, J., concur.