Nicole GLEN, et al., Plaintiffs,

v.

FAIRWAY INDEPENDENT MORTGAGE
CORP., Defendant.

No. 4:08CV730 RWS.

United States District Court,
E.D. Missouri,
Eastern Division.

Feb. 22, 2010.

David T. Butsch, James J. Simeri, Butsch Simeri Fields, LLC, Clayton, MO, Matthew R. Fields, Green Jacobson, P.C., St. Louis, MO, for Plaintiffs.

Brian M. Forbes, R. Bruce Allensworth, Robert W. Sparkes, III, K and L Gates LLP, Boston, MA, David D. Crane, Husch Blackwell Sanders, LLP, St. Louis, MO, for Defendant.

### *MEMORANDUM AND ORDER*

RODNEY W. SIPPEL, District Judge.

This matter is before me on plaintiffs' motion for class certification. Defendant opposes class certification. Following extensive briefing and a hearing held on December 17, 2009, I will grant class certification for the reasons that follow.

## I. *Introduction*

The Glens bring this putative class action against defendant Fairway under the Missouri Merchandising Practices Act, Mo.Rev. Stat. § 407.010 *et seq.* (MMPA). In Count III of their fourth amended complaint, plaintiffs allege that Fairway promised its customers in loan-origination agreements that it would reveal in good-faith estimates "additional compensation" it received from the lender. The Glens allege that Fairway provided them with good-faith estimates that did not disclose a yield-spread premium (YSP).

## II. *Proposed Class Definition*

Count III of plaintiffs' fourth amended complaint alleges the following class definition:

> All customers of Defendant Fairway who, in Missouri from *October 1, 2002* to the present, entered into real estate financing transactions with Defendant Fairway in which Defendant Fairway promised in writing that it would disclose additional compensation that it would receive from the lender on a good-faith estimate, and in which Defendant Fairway did in fact receive additional compensation from the lender.

(emphasis supplied). However in their reply brief in support of class certification filed on July 31, 2009 and at the hearing, plaintiffs suggested the following amended class definition:

> All customers of Fairway in Missouri who, from *April 21, 2002*, to the present, entered into a real estate financing transaction in which Fairway promised in writing that it would disclose additional compensation that it would receive from the lender on a good-faith estimate, and in which defendant Fairway did in fact receive additional compensation from the lender.

(emphasis supplied). Plaintiffs now argue the class period should extend from the earlier April date because their class claim should relate back to the filing of their class claim in the first amended complaint on April 21, 2008. Defendant opposes this amended class definition as untimely. Defendant also argues that the amendment should not relate

back to the filing of the first amended complaint.

Defendant's first argument is well-taken. Plaintiffs have never filed a motion to amend the complaint and properly assert their proposed amended class definition, and their time for doing so expired on November 30, 2008. The governing case management order provides that the schedule will not be modified except "upon a showing of exceptional circumstances." Here, plaintiffs offered no explanation for failing to seek leave to amend their complaint well beyond the time permitted by the case management order. Instead, they merely suggest in a footnote that "the class period should be April 21, 2002, for the reasons stated below." Yet the only "reasons" given are that plaintiffs believe that Missouri's six-year statute of limitations for claims against "moneyed corporations," Mo.Rev.Stat. § 516.420, applies to their class claim, and that their claim should relate back to the filing of their first amended complaint on April 21, 2002.[1] However, plaintiffs advanced these legal arguments in their brief in support of class certification, when they were asking the Court to certify the class period beginning October 1, 2002. If these reasons justified an amendment of the class definition, then plaintiffs should have advanced them much sooner, and certainly when they filed their motion to certify the class. They did not. Because plaintiffs have not demonstrated that amendment is warranted under the case management order, their request to modify the proposed class period from October 1, 2002 to April 21, 2002 will be denied. Plaintiffs' proposed motion to certify the class will be considered with the proposed class definition set forth in the fourth amended complaint and the motion and brief in support of class certification.

■ I must next consider whether a five-year or six-year statute of limitations applies to plaintiffs' class claim under the MMPA.

The MMPA does not contain a statute of limitations. Defendant argues that Missouri's five-year statute of limitations for civil actions, Mo.Rev.Stat. § 516.120(2), applies. Mo.Rev.Stat. § 516.120(2) applies a five-year statute of limitations period to "[a]n action upon a liability created by a statute other than a penalty or forfeiture." The Eighth Circuit Court of Appeals has held that claims under the MMPA are "subject to a five-year statute of limitations...." *Owen v. General Motors Corp.*, 533 F.3d 913, 921 n. 6 (8th Cir.2008) (citing *Ullrich v. CADCO, Inc.*, 244 S.W.3d 772, 778 n. 3 (Mo.Ct.App.2008); Mo. Rev.Stat. § 516.120(2)). Plaintiffs nevertheless argue that Missouri's six-year limitations period should apply to their MMPA claim because it is a suit for "a penalty or forfeiture" against a "moneyed corporation." *See* Mo.Rev.Stat. § 516.420.[2] This argument is wrong. By its terms, Mo.Rev.Stat. § 516.420 provides that *"[n]one of the provisions of section 516.380 to 516.420 shall apply* to suits against moneyed corporations or against the directors or stockholders thereof, to recover any penalty or forfeiture imposed, or to enforce any liability created by the act of incorporation or any other law ...." (emphasis supplied). Sections 516.380 through 516.420 provide limitations periods for actions on penal statutes. However, the Eighth Circuit has held that the applicable limitations period for MMPA claims can be found not in Sections 516.380 through 516.420, but in Mo. Rev.Stat. § 516.120(2), which applies to "[a]n action upon a liability created by a statute *other than a penalty or forfeiture." See Owen*, 533 F.3d at 921 n. 6 (emphasis supplied). Mo.Rev.Stat. § 516.420 does not apply to claims brought under the MMPA because they are not claims brought under the provisions of "section 516.380 to 516.420." Stated another way, the six-year limitations period of § 516.420 only applies to actions for penalties or forfeitures, and *Owen* holds that

---

1. As discussed below, defendant disagrees and argues instead that Missouri's five-year statute of limitations applies to plaintiffs' class claim.

2. Mo.Rev.Stat. § 516.420 states:
   None of the provisions of section 516.380 to 516.420 shall apply to suits against moneyed corporations or against the directors or stockholders thereof, to recover any penalty or for-

feiture imposed, or to enforce any liability created by the act of incorporation or any other law; but all such suits shall be brought within six years after the discovery by the aggrieved party of the facts upon which such penalty or forfeiture attached, or by which such liability was created.

claims under the MMPA are not claims for penalties or forfeitures. *See id.* The five-year limitations period provided by Mo.Rev. Stat. § 516.120(2) applies to plaintiffs' MMPA claim.[3]

Defendant next challenges plaintiffs' proposed class definition as overly broad because it is not limited to those borrowers actually harmed by defendant's failure to disclose additional compensation.[4] Defendant argues the class is not certifiable because the class definition is not limited to those borrowers to whom defendant did not disclose additional compensation as promised. Plaintiffs respond that the proposed class definition meets the requirements of Rule 23 because members of the class are readily ascertainable and membership is not predicated upon any merits determination. Moreover, plaintiffs contend that membership is readily ascertainable because defendant did not disclose its additional compensation to *any* Missouri borrowers, with one exception. Plaintiffs' counsel have examined all loan documents provided by defendant that relate to class membership, and defense counsel represented at the hearing that it cannot produce additional documents relating to its loan transactions. Plaintiffs therefore maintain that the proposed class is not overly broad because no members (with one exception) were provided with a dollar estimate of a YSP.

"The class definition must enable the Court to determine objectively who is in the class, and thus, who is bound by the ruling." *Walls v. Sagamore Ins. Co.*, 2009 WL 890528, *4 (E.D.Ark. March 31, 2009); *see also Dumas v. Albers Medical, Inc.*, 2005 WL 2172030, *5 (W.D.Mo. Sept.7, 2005). "Identifying the class insures that those actually harmed by the defendant's conduct will be the recipients of the relief eventually provided." *Id.* (quoting *In re PPA Products Liability Litig.*, 214 F.R.D. 614, 617 (W.D.Wash. 2003)). "[T]o accomplish this, the Court should not have to engage in lengthy, individualized inquiries in order to identify members of the class." *Walls,* 2009 WL 890528 at *4 (internal citation omitted). Here, the Court need not engage in individualized inquiries to determine class membership because the only evidence presented establishes that defendant did not provide any of its Missouri borrowers (except one) with a dollar estimate of the YSP. Therefore, all putative members in the proposed class definition are harmed by defendant's conduct under plaintiffs' theory of the case. The proposed class definition may be amended to specifically exclude from class membership the sole Missouri borrower who received the disclosure, but that does not prevent the class from being definable. If, however, during the course of merits discovery defendant discovers that the class definition includes individuals not actually harmed by defendant's conduct, then it may move to decertify the class if appropriate. However, on this record plaintiff's proposed class definition is sufficient.

### III. *Class Action Standard*

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Although "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," a court has no "authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

### A. *Requirements of Rule 23(a)*

■ Federal Rule of Civil Procedure 23(a) allows one or more individuals to sue as

---

3. Because I find that Mo.Rev.Stat. § 516.420 does not apply to plaintiffs' MMPA claim, I need not, and therefore do not, consider plaintiffs' argument that defendant is a "moneyed corporation" under the statute.

4. This argument was made starting at page 28 of defendant's brief in opposition to class certification. I have disregarded any additional arguments on this point which were improperly included in defendant's supplemental memorandum in opposition to class certification.

representative parties on behalf of a class "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *see also Alpern v. Utili-Corp United, Inc.,* 84 F.3d 1525, 1539 (8th Cir.1996); *Morgan v. United Parcel Service of America, Inc.,* 169 F.R.D. 349, 354 (E.D.Mo.1996). Plaintiffs have the burden to establish each of the four prerequisites: numerosity, commonality, typicality and adequacy of representation. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Additionally, a plaintiff must fulfill the requirements of a Rule 23(b) category in order to obtain certification for the proposed class. Fed.R.Civ.P. 23(b); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Plaintiffs bear the burden of proving both the threshold requirements of Rule 23(a) and fulfillment of one of the three subsections set forth in Rule 23(b). *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir. 1994).

*Rule 23(a): Numerosity*

■ A class may not be certified unless the proposed class is so large that joinder of all class members would be "impracticable." Fed.R.Civ.P. 23(a)(1). In their operative complaint, plaintiffs aver that there are at least 300 and probably 1,382 class members. At the hearing, however, plaintiffs stated that there is a class of at least 188 members based upon the documents provided by defendants to date. Upon questioning by the Court, plaintiffs estimated that the number of potential class members would increase based upon information yet to be provided by defendant. Defendant does not dispute that plaintiffs meet the numerosity requirement, and the Court finds that plaintiffs have met the numerosity requirement of Rule 23(a).

*Rule 23(a): Commonality*

Rule 23(a)(2) requires the presence of questions of law or fact common to the class.

However, the presence of differing legal inquiries and factual discrepancies will not preclude class certification. Plaintiffs contend that the common issue is whether Fairway's practice of promising to disclose compensation received from a lender and then failing to make this disclosure violates the MMPA. Plaintiffs also contend that this element is met because the claims arise from the same conduct of Fairway—namely, failing to make a disclosure after promising to do so, and common factual questions include whether the promise to disclose was made to each class member, whether compensation was paid by a lender to Fairway, and whether such payment was in fact disclosed to by Fairway in a good-faith estimate. Defendant does not dispute that plaintiffs meet the commonality requirement, and I find that plaintiffs have met the commonality requirement of Rule 23(a).

*Rule 23(a): Typicality/Adequacy*

■ Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." "The burden of showing typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir.1995). Rule 23(a)(4) requires that the named plaintiff must fairly and adequately protect the interests of class members. To meet this requirement, the named plaintiff must be a member of the class she seeks to represent. *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Roby,* 775 F.2d at 961; *Tuft v. McDonnell Douglas Corp.,* 581 F.2d 1304, 1307–08 (8th Cir.1978). In addition, the class representative must possess the same interest and suffer the same injury as the class members. *Rodriguez,* 431 U.S. at 403, 97 S.Ct. 1891. The adequacy rule also applies to lawyers seeking to represent the class. *See Bradford v. AGCO Corp.,* 187 F.R.D. 600, 605 (W.D.Mo.1999). Here, plaintiffs contend that their claims are identical to members of the putative class, and that they and their counsel will adequately represent and vigorously defend the interests of the

class. Plaintiff Nicole Glen testified similarly at the hearing.

■ Defendant first argues that plaintiffs do not meet this requirement because they are not members of the class. They raise the same argument in a threshold question of standing. Essentially, defendant argues that plaintiffs are not members of the putative class because they actually received disclosures of broker compensation consistent with the Real Estate Settlement Procedures Act (RESPA). This argument, however, goes to the merits of the claim and not to standing or the typicality and adequacy requirements under Rule 23(a). Whether plaintiffs are ultimately successful on their claims against Fairway is not the issue before the Court at this time. As long as the putative class members received disclosures similar to the ones made by Fairway to plaintiffs, plaintiffs have standing to represent the class. The evidence presented at the hearing demonstrates that plaintiffs easily satisfy this requirement—183 putative class members received disclosures identical to plaintiffs, and five more had slightly different variations of the same disclosure. Moreover, as plaintiffs repeatedly point out, whether the disclosure is consistent with federal law is irrelevant to the question before the Court, which is whether plaintiffs can bring claims under Missouri law.

Defendant also argues that Mr. Glen lacks standing and cannot satisfy the adequacy of representation requirement of Rule 23(a) because he waived any right to recover damages in his divorce proceeding. After reviewing the briefing and arguments of counsel on this issue, I find that Mr. Glen is not disqualified from representing the putative class members by virtue of the settlement agreement reached in his divorce proceeding. Plaintiffs have standing to bring this action and meet the typicality and adequacy requirements of Rule 23(a).

For these reasons, I find that plaintiffs meet the requirements for bringing a class action under Rule 23(a).

### B. Requirements of Rule 23(b)(3)

In addition to satisfying the requirements of Rule 23(a), to be certified as a class action plaintiffs must also fulfill the requirements of one of the Rule 23(b) categories. Here, plaintiffs allege that they meet the requirements of Rule 23(b)(3), which permits class certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. *See In re Visa*, 280 F.3d at 136–40. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. *See id.* In other words, "just because the legal issues or underlying theories of recovery involved may be common to all class members does not mean that the proof required to establish these same issues is sufficiently similar to warrant certification." *Dumas v. Albers Med., Inc.*, 2005 WL 2172030, *3 (W.D.Mo. Sept.7, 2005). "The standard for certification imposed by Rule 23(b)(3) is more demanding than the commonality requirement of Rule 23(a), and mandates caution, particularly where individual stakes are high and disparities among class members are great." *In re Genetically Modified Rice Litig.*, 251 F.R.D. 392, 397 (E.D.Mo.2008).

"To determine whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir.2005). "In conducting this preliminary inquiry, however, the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs' general allegations are true, common evidence could suffice to make out a

prima facie case for the class." *Id.* at 566–67. "The preliminary inquiry at the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case." *Id.* at 567. "Nonetheless, such disputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class." *Id.* "The closer any dispute at the class certification stage comes to the heart of the claim, the more cautious the court should be in ensuring that it must be resolved in order to determine the nature of the evidence the plaintiff would require." *Id.*

Plaintiffs allege that the "predominate issue is whether Fairway's practice of promising that it would disclose to consumers the compensation it received from lenders and then failing to make this disclosure violates the MMPA." They claim that the common factual questions include "whether the promise to disclose was made to each class member, whether compensation was paid by a lender to Fairway, and whether such payment was in fact disclosed to putative class members by Fairway in a good-faith estimate." Plaintiffs contend that these issues predominate over any individual issues that Fairway might assert.

In opposition, Fairway argues that the issues of liability and damages are questions that are individual in nature and therefore not suitable for class treatment. Fairway claims that "while the (same) factual questions and the underlying legal theory must be asked and applied to each putative class member, those questions (necessary to a finding of liability) can only be answered on an individualized, transaction-by-transaction basis." Fairway claims there is no common evidence to establish a "false promise" on a class-wide basis because it depends on "transaction-specific inquiries." The Court disagrees. As alleged by plaintiffs in their operative complaint and demonstrated at the hearing, plaintiffs' class claim is based on a standardized form contract that contains the identical (or nearly identical) promise to dis-

close compensation. This uniform promise that forms the basis of plaintiffs' class-wide claim does not depend on a transaction-specific inquiry, but instead may be proven by evidence common to the class. This common question predominates over individualized issues and makes this claim suitable for class-wide treatment.

Fairway also argues that whether the promise was false includes an individualized inquiry into whether the YSP constitutes "reasonable compensation for the goods." In support of this argument, Fairway relies heavily on the Eighth Circuit Court of Appeal's opinion in *Glover v. Standard Federal Bank,* 283 F.3d 953 (8th Cir.2002). *Glover,* however, is inapposite here. As I stated on the record during the class certification hearing, the "reasonableness" inquiry is only relevant to a determination of whether Fairway violated RESPA. However, plaintiffs are not bringing a RESPA claim, and the reasonableness of any compensation paid for the services provided is not an element of plaintiffs' MMPA claim. Because RESPA is not an issue in this case, *Glover* does not apply and individualized determinations of reasonableness will not preclude class certification.

Fairway also argues that individual issues of reliance preclude class certification. It is true that the MMPA "supplements the definition of common law fraud, eliminating the need to prove intent to defraud or reliance." *Schuchmann v. Air Servs. Heating & Air Conditioning,* 199 S.W.3d 228, 233 (Mo.Ct.App.2006). Despite this rule, the Eighth Circuit has held, when analyzing Minnesota's analogous statute, that reliance remains an important consideration at the class certification and the merits stages. *In re St. Jude Med., Inc.,* 522 F.3d 836, 839–840 (8th Cir.2008). In *St. Jude,* the Eighth Circuit stated that "[b]ecause proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases often are unsuitable for class treatment." *Id.* at 838. The appellate court concluded that class treatment was unsuitable for plaintiffs' claims over allegedly defective heart valves because defendant's potential liability to each plaintiff under the

consumer fraud statute would "be dominated by individual issues of causation and reliance. The need for such plaintiff-by-plaintiff determinations means that common issues will not predominate the inquiry into [defendant's] liability." *Id.* at 840. In addition, the Eighth Circuit held that reliance, even where not required as a part of plaintiff's prima facie case, remains "highly relevant and probative on the question whether there is a causal nexus between alleged misrepresentations and any injury." *Id.* at 840. "[W]here ... the plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements or conduct in violation of the misrepresentations in sales laws, as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes." *Id.* at 839.

Fairway is attempting to analogize this case to *St. Jude*, arguing that whether each putative plaintiff actually relied on any misrepresentation will require individualized determinations that predominate any common issues. In addition, Fairway claims that damages calculations will also necessitate an individualized inquiry because whether each plaintiff relied on the alleged false promise is relevant to demonstrate proximate cause. Plaintiffs respond that this case is distinguishable from *St. Jude* because here, unlike in *St. Jude*, the claims of individual class members are not dependent upon individual representations made to class members by Fairway. Rather, the class claim is based upon a promise made to all putative class members in a form contract. In addition, unlike the difficulties associated with assessing damages from a defective heart valve (and the medical monitoring sought by plaintiffs in *St. Jude* ), here damages are readily ascertainable and calculable. Plaintiffs contend that this case is more analogous to *In re FedEx Ground Package System, Inc.*, 2008 WL 5263376 (N.D.Ind. Dec. 16, 2008). In that case, the district court was asked to apply the *St. Jude* case to the certification of a class of former FedEx drivers asserting claims under Minnesota's consumer protection statute. The district court, however, declined to do so and instead distinguished its case from *St. Jude* as follows:

The Minnesota plaintiffs present evidence that FedEx required all of its drivers to sign a standard operating agreement acknowledging their employment status as independent contractors. Therefore, unlike in *St. Jude*, there is no question as to whether each class member received FedEx's representations.... Finally, while the issue of medical monitoring costs and consequential damages required individual inquiry into the plaintiffs' personal histories in *St. Jude*, these considerations aren't present in the driver's litigation. Accordingly, FedEx hasn't shown that *St. Jude* compels the conclusion that individual issues of causation and reliance predominate over the common questions of fact.

*Id.* at \*4. Plaintiffs contend that the same distinctions apply here and do not preclude certification.

The Court agrees with plaintiffs and finds that *St. Jude* does not preclude class certification here. Common questions of fact predominate because the primary issue in this case involves the legality of defendant's conduct in allegedly failing to disclose the YSP in violation of its promise. Unlike in *St. Jude*, where there was evidence that some potential class members did not receive any representations about defendant's heart valve, here there is evidence that all class members received nearly identical promises from Fairway to disclose additional compensation. Because the class claim is based upon a promise given to all putative class members in a form contract and can be proven with common evidence, individualized inquires are not necessary and do not defeat class certification. *See Mooney v. Allianz Life Ins. Co. of North America*, 2009 WL 511572, \*6–7 (D.Min. Feb. 26, 2009) (distinguishing *St. Jude* and finding common issues predominate in fraud class action case because almost every class member received same relatively straight-forward misrepresentation in brochure).

■ As for damages, plaintiffs respond that fact-intensive inquiries are not necessary to determine damages because of the form nature of the contract. Plaintiffs correctly note that Fairway's argument that the

computation of damages must be measured against "the reasonable value of the goods, facilities, and services provided by Fairway" is the measure of damages under the federal statute RESPA, not the MMPA. Based on the arguments and evidence presented, plaintiffs' damages are readily ascertainable and calculable.[5] *St. Jude* does not preclude certification because this case does not involve highly individualized questions of damages, unlike the complex issues of medical monitoring associated with the defective heart valves at issue in *St. Jude. See Mooney,* 2009 WL 511572 at *6 (distinguishing *St. Jude* because the court found no complex, individualized issues in remedial phase to defeat predominance requirement).

Defendant also argues the class action is not the superior mechanism for adjudicating plaintiff's proposed class claims because they will require individualized evidence, resulting in numerous mini-trials.[6] This argument simply restates the arguments made by defendant above, and it will be rejected for the same reasons. I agree with plaintiffs that class-action treatment is the superior method for resolving these controversies because they involve only Missouri plaintiffs, each with relatively small claims, who might not otherwise seek or obtain relief absent a class action. *See In re Workers' Compensation,* 130 F.R.D. 99, 110 (D.Minn.1990) (hold that "dismissal for management reasons is never favored" because class actions are meant "to permit plaintiffs with small claims and little money to pursue a claim otherwise unavailable.") (internal citations omitted). Class action treatment is also appropriate because the Court only need apply the law of Missouri.

For these reasons I find that plaintiffs meet the requirements for bringing a class action under Rule 23(b).

## C. Conclusion

Based on the foregoing, I will grant plaintiffs' motion for class certification. The Court will set a status conference with counsel to discuss class notification and scheduling issues.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for class certification [# 83] is granted in part and denied in part as set forth above. Plaintiffs are to file an amended class definition that complies with this Memorandum and Order within fifteen days of the date of this Order.

**IT IS FURTHER ORDERED** that there will be an *amended scheduling conference on Thursday, March 11, 2010 at 2:30 p.m. in the chambers of the undersigned to discuss class notification and scheduling issues.* By not later than *March 5, 2010,* the parties shall file a joint memorandum setting out the issues for discussion at the status conference, as well as any areas of agreement and disagreement between the parties, and a proposed schedule for class notification and discovery for the remainder of the case. All proposed orders for the Court's consideration at the status conference shall be filed by *March 9, 2010.*

5. Plaintiffs contend that the computation of damages can be accomplished using computer records and clerical assistance, rendering it unnecessary to hold evidentiary hearings for each class member. Defendants cannot be heard to argue that class certification should be denied merely because the class member's damages are not identical.

6. A court may certify a class under Rule 23(b)(3) only if it concludes that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.Civ.P. 23(b)(3). Factors relevant to the court's inquiry into superiority include "the class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R.Civ.P. 23(b)(3)(A), "the extent and nature of any litigation concerning the controversy already begun by or against class members," Fed. R.Civ.P. 23(b)(3)(B), "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," Fed.R.Civ.P. 23(b)(3)(C), and "the likely difficulties in managing a class action," Fed.R.Civ.P. 23(b)(3)(D). *See Avritt v. Reliastar Life Ins. Co.,* 2009 WL 455808, *7 (D.Minn. Feb.23, 2009).